O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| THOMAS A. SEAMEN,<br><br>Plaintiff<br><br>vs.<br><br>VALLEY HEALTH CARE MEDICAL GROUP, INC. ET AL.,<br><br>Defendants. | Case No.: SA CV 13-1709-DOC (RNBx)<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR ENTRY OF STIPULATED JUDGMENT [61]** |

Before the Court is Plaintiff's Ex Parte Application for Entry of Stipulated Judgment ("Application") (Dkt. 61).

### I.  Background

In October 2013, Plaintiff Thomas A. Seamen ("Plaintiff" or "Receiver") brought an action against Defendants Valley Health Care Medical Group Inc. ("Valley Health"), Richard Jeffrey Kroop, MD ("Dr. Kroop"), and Dolores Kroop ("Ms. Kroop")[1] (collectively, "Defendants"). *See* Complaint ("Compl.") (Dkt. 1). In February 2015, the parties notified the Court that the matter had been completely settled following a mediation with ADR panel mediator John Brinsley. *See* Mediation Report (Dkt. 44) at 1. Plaintiff filed a Motion for Approval of Settlement Agreement on April 6, 2015 (Dkt. 50), which the Court granted on April 9, 2015 (Dkt. 51).

The Settlement Agreement ("Agreement") consists of a series of initial recitals and twenty-one specific provisions. *See generally* Settlement Agreement (Dkt. 62-2) Ex. A ("Settlement Agreement"). In the sixth provision, Defendants specifically acknowledge liability with respect to the underlying claims: "The judgment shall be in the amount of $2,500,000, which reflects the acknowledged liability of Defendants, in the Receiver's favor . . . ." *Id.* ¶ 6. As part of the Agreement, Defendants also agreed to a payment plan whereby they would make an initial payment of $10,000 to the Receiver, make monthly payments of $7,500 to the Receiver ("Monthly Payments"), and pay an additional $30,000 by the end of each year ("Balloon Payments"). Settlement Agreement ¶ 3. With respect to the Monthly Payments, the Agreement provides:

> Defendants shall pay to the Receiver, or the Receiver's designee, assignee or successor, $7,500 per month for each month thereafter . . . Any failure to pay a Monthly Payment shall be cured by payment of certified funds within 5 days without necessity of notice to Defendants. Any failure to pay or cure shall be a default under the Note (below) and this Agreement.

*Id.* The Agreement states that if Defendants failed to pay Plaintiff according to this payment schedule (and cure within a 5-day period), Plaintiffs would file a stipulation for entry of judgment in the amount of $2.5 million – less any payment made. *Id.* ¶ 6. In the event of an

---

[1] The Court notes that Ms. Kroop was dismissed from the action on April 24, 2015. *See* Order Granting Joint Request for Dismissal (Dkt. 53) at 1.

uncured default, the parties agreed that the "declaration of the Receiver or his assignee stating the uncured default and the amount of payments received shall be sufficient for entry of judgment." *Id.* Separately, in the seventh provision, the Receiver agreed to release any and all "deeds of trust, UCC liens and/or other encumbrances" on Dr. Kroop's home within 30 days of the Court's approval of the settlement. *Id.* ¶ 7.

The Receiver sought entry of the stipulated judgment in early May after Defendants failed to make the initial $10,000 payment and the first Monthly Payment. *See* Ex Parte Application (Dkt. 54). The Court held a hearing on May 26, 2015 and allowed Defendants to cure their deficiency of $17,500. Hearing Minutes (Dkt. 57).

The Receiver now seeks entry of the stipulated judgment because Defendants again failed to make the required Monthly Payments and cure in August, September, and October 2015. Application at 3; Settlement Agreement ¶ 2. Defendants do not dispute that they failed to make the required payments. *See* Opp'n at 6 ("Dr. Kroop . . . is confident that all outstanding payments to the Receiver will be paid this month."); Declaration of Richard Jeffrey Kroop, MD ("Kroop Decl.") (Dkt. 62-2) ¶ 9.

On September 21, 2015, Francis Plaintiff's counsel ("Plaintiff's counsel") informed Dr. Kroop and Edwin Defendants' counsel ("Defendants' counsel") of his intent to file a request for entry of the stipulated judgment. Declaration of Edwin R. Defendants' counsel ("Defendants' counsel Decl.") (Dkt. 62-1) Ex. A. at 3. Defendants' counsel informed Plaintiff's counsel that Dr. Kroop would cure the deficiency right away. *Id.* at 2. Defendants provided the Receiver with a check for $7,500 in an effort to partially cure the default; however, the bank returned the subsequent check for insufficient funds. Declaration of Thomas A. Seamen ("Decl. Seamen") (Dkt. 61-1) ¶ 3.

On September 28, 2015, Defendants' counsel sent an email to Plaintiff's counsel inquiring about the status of Dr. Kroop's default and asking for an official copy of the release on the liens. Defendants' counsel Decl. Ex. A. at 1. Plaintiff's counsel sent the copy of the recorded releases the same day. He also wrote in his email that "Dr. Kroop is in default under the

Agreement and the Receiver intends to act in accordance with his notice regarding his remedies." *Id.*

Plaintiff then filed the instant Application on October 6, 2015 seeking $2,457,500 pursuant to the parties' stipulated judgment. Defendants opposed the following day (Dkt. 62). The Court then allowed Plaintiffs to file a Reply and Defendants to file a Sur-Reply, which the parties did on October 26 and October 30, 2015 (Dkts. 64, 65). The Court held a hearing on December 14, 2015 (Dkt. 70).

## II. Legal Standard

Courts have long recognized that settlement agreements "'are highly favored as productive of peace and good will in the community,' as well as 'reducing the expense and persistency of litigation.'" *Neary v. Regents of Univ. of Cal.,* 3 Cal. 4th 273, 277, 10 Cal.Rptr.2d 859, 834 P.2d 119 (1992) (quoting *McClure v. McClure,* 100 Cal. 339, 343 (1893)). Further, "where the parties have stipulated to the nature or amount of a remedy, it is proper for the trial court to honor the parties' agreement unless it finds that to do so would be contrary to a rule of law or public policy." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.,* 176 Cal. App. 4th 697, 725 (2009). Stipulated judgments are "privately negotiated remedies" and courts "may not remake the bargain to the advantage of one party for no reason other than the party has become dissatisfied with the agreement." *Id*. Disputes "concerning a settlement agreement are governed by applicable state contract law." *U.A. Local 342 Joint Labor-Management Committee v. South City Refrigeration, Inc.*, No. C-09-3219 JCS, 2010 WL 1293522, at *2 (N.D. Cal. 2010).

## III. Discussion

### A. Reasonableness of Stipulated Judgment

As noted above, the parties do not dispute that Defendants failed to comply with the agreed-upon payment plan. Under the clear terms of the Agreement, a breach and uncured default entitles Plaintiff to seek entry of the parties' stipulated judgment. Settlement Agreement ¶ 3. While Defendants did not specifically argue the stipulated judgment amount was unreasonable, the Court finds it prudent to consider this issue.

A court in this district previously enforced entry of a stipulated judgment in a case involving virtually identical facts. *See Rose v. Enriquez*, No. CV 11-07838, 2012 WL 6618261 (C.D. Cal., Dec. 19, 2012). In *Rose*, the parties entered a stipulated agreement whereby defendant Michael Enriquez ("Enriquez") was to pay plaintiffs in four installments. When Enriquez failed to comply with the payment plan, plaintiff moved for entry of stipulated judgment, which required Enriquez to pay $3.5 million to plaintiff. *Id.* at *2. In concluding there was a reasonable relationship between the stipulated judgment of $3.5 million and the breach of the settlement agreement, the court highlighted "the proof offered, [defendant Enriquez's] admission of liability, and the extended mediation proceedings during which the settlement agreement was negotiated . . . ." *Id.*

Further, the *Rose* court considered and rejected the argument that plaintiffs should only be able to recover "damages incurred as a result of delay in making any of the installment payments due under the parties' settlement agreement." *Id.* (citation omitted). Judge Pregerson reasoned that:

> If that were the rule, a stipulated judgment could never be more than the settlement amount plus interest and other economic consequences. Such a rule would hamstring parties' ability to craft pragmatic settlement agreements that reflect their priorities and to create incentives among themselves for the achievement of their goals. Where, as here, parties mutually agree upon the liability of one party and the resulting amount of damage caused by that party, a stipulated judgment in the amount of those damages will not be unreasonable.

*Id.*[2]

The *Rose* decision is directly applicable here. The parties, like the parties in *Rose*, negotiated and consented to the settlement agreement after meditation proceedings. Additionally, as in *Rose*, Defendants admitted liability in the Agreement itself. Indeed, the Defendants' admissions were expressly linked to both the Receiver's claims and the monetary

---

[2] The *Rose* court also relied on this line of reasoning in distinguishing its decision from the California appellate court's decision in *Greentree Financial Court, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495, 497 (2012). In *Greentree*, the court declined to enforce a stipulation for entry of judgment because the judgment bore "no reasonable relationship to the range of actual damages the parties could have anticipated would flow from a breach of their settlement agreement." *Id.* at 497–98 (quoting *Sybron Corp. v. Clark Hosp. Supply Corp.*, 76 Cal. App. 3d 896 (1978)). Specifically, while there was "no admission of liability" in *Greentree*, the agreement at issue in *Rose* contained "an express statement of Defendants' liability." *Rose,* 2012WL 6618261, at *2.

amount at issue: "As part of the instant Agreement, Defendants acknowledge liability of $2,500,000 on all claims alleged by the Receiver." Settlement Agreement at 1 ("Recitals"); *see also id.* ¶ 6 ("The judgment shall be in the amount of $2,500,000, which reflects the acknowledged liability of Defendants . . . ."). Considering Defendants acknowledged their wrongdoing in the amount of $2.5 million, and because the parties mutually contemplated and agreed on this remedy in the event of an uncured default, the Court finds the stipulated judgment to be reasonable. *Id.*[3]

### B.     Material Breach

Defendants offer two separate arguments why the stipulated judgment should not be enforced: (1) the Receiver materially breached the Agreement and therefore the Defendants' non-performance was excused, and (2) Defendants' non-performance was due to circumstances out of their control. Opp'n at 4–6. Neither of these arguments withstands scrutiny.

"To excuse performance by one party to a contract, the breach by the other party must be material." *Card Tech Int's, LLC v. Provenzano*, No. CV 11-2434 DSF (PLAx), 2012 WL 2135357, at *20 (C.D. Cal. June 7, 2012) (citing *Jenkins, Inc. v. Walsh Bros.*, 776 A.2d 1229, 1234–35 (Me. 2001) (citing *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2012)). A "'material' breach is the non-performance of a duty 'that is so material and important as to justify the injured party in regarding the whole transaction as at an end.'" *Card Tech*, 2012 WL 2135357, at *36 (quoting *Jenkins*, 776 A.2d at 1234). Whether a "partial breach of a contract is material depends on 'the importance or seriousness thereof and the probability of the injured party getting substantial performance.'" *Brown*, 192 Cal. App. 4th at 278. Further, the determination of "whether a promise is an independent covenant, so that breach of that promise by one party does not excuse performance by the other party, is based on the intention of the parties as deduced from the agreement." *Id.* at 279.

---

[3] The *Rose* court also relied on this line of reasoning in distinguishing its decision from the California appellate court's decision in *Greentree Financial Court, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495, 497 (2012). In *Greentree*, the court declined to enforce a stipulation for entry of judgment because the judgment bore "no reasonable relationship to the range of actual damages the parties could have anticipated would flow from a breach of their settlement agreement." *Id.* at 497–98 (quoting *Sybron Corp. v. Clark Hosp. Supply Corp.*, 76 Cal. App. 3d 896 (1978)). Specifically, while there was "no admission of liability" in *Greentree*, the agreement at issue in *Rose i*
contained "an express statement of Defendants' liability."

Here, Defendants argue the Receiver's failure to release liens on Dr. Kroop's home within 30 days of approval of the settlement, as required by provision 7 of the Agreement, constitutes a material breach that excused their performance to make the Monthly Payments. Opp'n at 4–5. The Receiver responds that his failure to timely release the liens from Dr. Kroop's home was an independent provision that "does not serve to excuse Defendants' failure to make payments." Reply at 4.

Based on both the language of the Agreement and the evidence presented, the Court finds the Receiver's failure to release liens on Dr. Kroop's home was not a material breach that excused Defendants' obligation to make payments. Looking first to the text of the Agreement, there is no indication that the stipulated judgment clauses in provision 6 of the Agreement was conditioned on or "integrally related" to the Receiver's obligations to release liens in provision 7.[4] *See 530 Hewitt Subsidiary, LLC v. P.G.C.A. Holdings, Inc.*, 2014 WL 3406295, at *7 (Cal. Ct. App. July 14, 2014). Put differently, it is not apparent from the text of the Agreement why the Receiver's failure to timely release a lien on Dr. Kroop's home should excuse Defendants' failure to make the required payments in August, September, and October 2015. The stipulated judgment provision makes no reference to the release of liens; rather, it is tied to the payment plan schedule outlined in provision 3.

Further, there is no strong logical connection between the stipulated judgment and release provisions. The stipulated judgment amount of $2.5 million corresponds to Defendants' acknowledged liability for all claims alleged by the Receiver. Therefore, it follows that Defendants agreed to the stipulated judgment provision in exchange for a release of the claims against them.[5] Thus, "based on the intention of the parties as deduced from the agreement," the Receiver's breach is an "independent covenant" that does not excuse the Defendants' non-performance. *Brown*, 192 Cal. App. 4th at 278–279.

---

[4] In their Opposition, Plaintiffs cite to California Civ. Code § 1439, a provision dealing with conditions precedent in contracts. However, "it is the law of this circuit and the state of California that '[c]onditions precedent are not favored and the courts will not construe stipulations as conditions unless required to do so by plain, unambiguous language." *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1444 (9th Cir. 1986) (citation omitted). Because the language does not suggest the two provisions were conditioned on one another, the Court declines to treat them as such.

[5] The parties' release of claims is provided in provision 9 of the Agreement.

Defendants have not provided the Court with persuasive extrinsic evidence that the Receiver's failure to release liens on Dr. Kroop's home rises to the level of a material breach. Dr. Kroop now states the release of liens on his home was an "indispensable part" of the Agreement, and that "Defendants strenuously bargained for the prompt release of Medical Capital's liens on the aforementioned property because my wife and I were in the process of refinancing our home." Kroop Decl. ¶ 5; *see also* Sur-Reply at 6 (the Receiver's failure to release the liens "deprived Dr. Kroop and his wife "of the opportunity to refinance their home""). Sur-Reply at 6. But these statements by themselves are insufficient for the Court to conclude the release provision was a material provision.

In their moving papers, Defendants argue they made "repeated demands" to the Receiver to release the liens. *See* Opp'n at 2; Sur-Reply at 4. The only evidence Defendants offer in support of this argument is the email chain from their counsel to Plaintiff's counsel in late September. But the fact that Defendants asked about the releases on September 28, 2015 –*after* Defendants breached their duties to make the Monthly Payments in August and September – is not compelling evidence the release provision was material. A review of the email chain suggests the opposite. When Plaintiff's counsel emailed Defendants' counsel on September 21 to notify him of the Receiver's intent to file for entry of stipulated judgment, Defendants' counsel simply acknowledged the default and conveyed his client's intent to cure – he did not raise any arguments related to the release of liens. Plus, even after they learned in late September the liens had been released, Defendants again failed to make the required Monthly Payment on October 1 (as well as the November or December Monthly Payments).[6] Therefore, Defendants have not shown the Receiver's non-performance was "'so material and important as to justify'" their failure to make payments under the Settlement Agreement. *Card Tech*, 2012 WL 2135357, at *36 (quoting *Jenkins*, 776 A.2d at 1234).

### C.     Impossibility/Impracticability

Defendants' other argument – that their performance was discharged on impossibility or impracticability grounds – also fails. Specifically, Defendants contend that "Defendants'

---

[6] Further, as the Court learned at the hearing, despite Dr. Kroop's representations that "all outstanding payments will be paid" by October, *see* Kroop Decl. ¶ 9, the payments have not yet been made as of December 14, 2015.

inability to make the aforementioned installments were out of their control, as a recent US Bank closure deprived Dr. Kroop of income from his medical practice for almost 7 weeks." Opp'n at 5. But, as a court in this Circuit explained, "a party may not generally rely on an impossibility defense to justify its failure to make payments, as making payments is not objectively impossible or impracticable." *Hebrank v. Linmar Mgmt., Inc.*, No. 3:13-cv-2179-GPC-JMA, 2014 WL 3741634, at *4 (S.D. Cal. July 29, 2014). Defendants have not presented any compelling reason for this Court to stray from this general rule. Accordingly, the Court finds that Defendants cannot invoke an impossibility or impracticability defense to justify their failure to make the required payments under the Agreement.

### D. Disposition

For the foregoing reasons, Plaintiff's Application for Entry of Stipulated Judgment is GRANTED.

*[signature: David O. Carter]*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated: December 16, 2015